STATE of Wisconsin, Plaintiff-Appellant,

v.

Marc NORFLEET, Defendant-Respondent.

Court of Appeals

*No. 01-1374-CR. Submitted on briefs February 7, 2002.—
Decided April 3, 2002.*

2002 WI App 140

(Also reported in 647 N.W.2d 341.)

570

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Michael R. Klos*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alan D. Eisenberg* of *Law Offices of Alan D. Eisenberg*, Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1.   ANDERSON, J.   The State appeals a judgment of acquittal that dismisses, with prejudice, the case against Marc Norfleet. The State argues that the trial court erred when it failed to comply with the State's request to hold an in camera inspection under WIS. STAT. § 905.10(3)(b) (1999–2000)[1] to determine, on the record, whether there was a reasonable probability that the confidential informant could provide relevant testimony necessary to a fair determination on the issue of guilt or innocence. Additionally, the State argues that if the trial court's order of dismissal was in error, then Norfleet may be retried without violating the prohibition against double jeopardy. We conclude that there was sufficient evidence in the record to permit a rational court to conclude that a reasonable probability existed that the informant could provide relevant testimony necessary to a fair determination on the issue of guilt or innocence. Therefore, the decision to forego an in camera hearing was within the discretion of the trial court.

## BACKGROUND

¶ 2.   On June 29, 2000, as reported in an affidavit in support of the complaint, the police received a "tip" from a confidential informant that Norfleet was dealing drugs from his residence and that Norfleet kept the drugs at the corner of the parking lot outside his

---

[1] All statutory references are to the 1999–2000 version unless otherwise noted.

residence. Police, using a drug-sniffing dog, located a cellophane bag near a fence in the apartment building's parking lot. The cellophane bag contained fifteen plastic baggies with a total of seventy-five grams of cocaine inside the baggies. According to the affidavit, Norfleet's fingerprints were found on two of the plastic baggies and on one of the folded paper bindles recovered from the cocaine cache. A criminal complaint and warrant were filed on July 28, 2000, charging Norfleet with possession of a controlled substance, within 1000 feet of a school, with intent to deliver in violation of WIS. STAT. §§ 961.16(2)(b)1 and 961.41(1m)(cm)4.

¶ 3. On August 18, 2000, defense counsel filed a Motion and Demand for Discovery and Inspection to provide, inter alia, the names, addresses, and any relevant information provided by any informant in the case. On February 7, 2001, five days before the jury trial was scheduled to begin, defense counsel received a report by Telefax from the Wisconsin State Crime Lab. The report stated that "unidentified latent prints on [plastic baggies] were examined and compared with the inked fingerprints . . . [of Norfleet's girlfriend] and [n]o identification [was] effected." Defense counsel filed an affidavit on February 9, 2001, complaining about the "tardy" submission of the report.

¶ 4. In the State's opening statement, the district attorney revealed that the bag was sent to the State crime lab for fingerprint analysis prior to arresting and charging Norfleet. As defense counsel points out, the results of the fingerprint analysis were included in the charging document on July 28, 2000, with regard to Norfleet's fingerprints. However, the unidentified fingerprints were not revealed to defense counsel until five days prior to trial, a span of six months from the time

the report was given to the State and defense counsel's Motion and Demand for Discovery.

¶ 5.  From defense counsel's opening statement, the court first learned that Norfleet believed the fingerprint belonged to whoever placed the contraband there and might be that of the informant, Norfleet's landlord, or the police officers. Also, it appears from the record that the informant's fingerprint was never checked against the unidentified fingerprint.[2]

¶ 6.  During the trial, the State called Detective Daniel Dringoli to establish why police conducted a search near Norfleet's residence. The hearsay testimony concerning the informant was not admitted for the truth of the assertions. As can be seen from this testimony, the State actually established that the informant had knowledge beyond that of a mere tipster.

> Q:  I'd like to take you back to June 29th of last year. At—on that date did you receive certain confidential information regarding drug trafficking occurring at Apartment No. 3 at 927 Louise Street in the City of Neenah?

A:  Yes, I did.

. . . .

> Q:  All right. Tell me the information that you received on this tip.
>
> A:  I received a phone call about possible drug dealing going on at 927 Louise Street.

. . . .

---

[2] Combining this with the State's late disclosure to defense counsel of the unidentified fingerprint makes the State's pretrial conduct suspicious.

Q:   Go ahead.

A:   I received a phone call from someone who indicated that they thought there might be drug activity going on at 927 Louise Street.

. . . .

Q:   Did the informant give you any particulars regarding the drug dealing?

A:   That there was a black male that lived there and drove a green blazer.

Q:   All right, what else?

A:   That they saw this person going outside numerous times and there were people coming and going throughout the day and night.

Q:   Was there any specific mention of where this—these drugs might be?

. . . .

A:   They said that there was an area outside by the dumpsters somewhere that they thought he was getting stuff from there.

¶ 7.   On cross-examination, defense counsel asked the detective to disclose the informant's name; the detective refused. Defense counsel then asked the court to order disclosure. At this point, the prosecutor responded that the State was invoking its privilege of nondisclosure under WIS. STAT. § 905.10(1).[3] The pros-

---

[3] WISCONSIN STAT. § 905.10 states in relevant part:

**Identity of informer. (1)** RULE OF PRIVILEGE. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information

ecutor requested an in camera hearing pursuant to § 905.10(3)(b), to determine if the informant's testimony would support the defense's theory. The following exchange then took place:

> **THE COURT:** Well, the statute in Sub. 3(b) says, if it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of guilt or innocence or of a material issue on the merits in a civil case—which isn't relevant here—the judge shall give the State an opportunity to show, in camera, facts relevant to determining whether the informer can, in fact, supply that testimony. Now, that's normally done in the form of affidavits, but I could direct that the testimony be taken if it cannot be resolved satisfactorily.

> **[DEFENSE COUNSEL]:** I'd like to point out that the divulging of a fingerprint was first brought to my attention last week. Then they sent me a report saying that only—that they compared that fingerprint to Amanda Scripture and that it wasn't hers, which is one of our witnesses. Then they sent me a letter saying two other people were being submitted for comparison, one of them Dringoli, and there's been no divulging of whose—who the fingerprint belongs to. This is unconscionable to withhold the informant in terms of the timing of these events. The very, very, very, very, very late disclosure of an unidentified fingerprint, the unconscionably delayed disclosure that it's not Amanda Scripture and then the totally untimely divulgence that there are two other people being submitted with no response as to those two.

---

relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

**THE COURT:** Frankly, to me it's very unfair to come into a courtroom with a non-disclosed—informer, particularly under the circumstances where the defense is claiming that they had nothing to do with this. The State has an option I'm going to rule—well, I—

**[PROSECUTOR]:** I think.

**THE COURT:** —with this defense, they should have an opportunity to cross-examine this informer because the informer may very well be the one who placed it there if it wasn't the defendant and the jury's entitled to consider that. So I'm going to rule that the disclosure is relevant and is necessary to a fair determination of the issue of guilt or innocence in this case. The State now has a motion—now has an option.

**[PROSECUTOR]:** Could we adjourn for a few minutes?

**THE COURT:** Yes, we can take a short break.

**[PROSECUTOR]:** Thank you.

**THE COURT:** Take the jury down.

(Bailiff complies.)

(Brief recess.)

**THE COURT:** Back on the record in the absence of the jury. Mr. Priebe?

**[PROSECUTOR]:** Well, your Honor, the State, at this point, is not prepared to disclose the identity; but just citing 905.10(3)(b), the judge shall give the State an opportunity to show in camera why. I would invoke that part of the statute to explain to the court why—

**[DEFENSE COUNSEL]:** This is in camera.

**[PROSECUTOR]:** This is in open court.

577

**THE COURT:** Well, I don't consider this in camera; but on the other hand, I frankly don't know . . . but under the circumstances as disclosed in the opening statements of the nature of the defense, not to disclose what could be a very material witness to this is certainly critical.

**[PROSECUTOR]:** Which is all the more reason we would like the chance to explain in camera. I think we have the right to do that.

**[DEFENSE COUNSEL]:** This isn't even timely to invoke that.

**[PROSECUTOR]:** The motion—

**[DEFENSE COUNSEL]:** We have already begun the jury.

**THE COURT:** Without the disclosure of the informer, tell me why you don't want to disclose.

**[PROSECUTOR]:** For a couple of reasons: pending investigations not related to this matter, as well as the safety of the informer.

**THE COURT:** Neither one has anything to do with this case. I find that's not sufficient. I have already found that the testimony from this informer or at least disclosure is relevant and necessary for a fair trial. This is still America. We don't operate in a star chamber. The State now has an option, you disclose or the case is dismissed.

**[PROSECUTOR]:** With due deference, Judge, I think we're entitled to say what our reasons are in camera.

**[DEFENSE COUNSEL]:** He just did.

**THE COURT:** You did. You said pending investigations and safety of the informant. If that's more important to the State than a conviction of this defendant, then the case is going to be dismissed, but I'm talking about a fair trial for a defendant who is presumed innocent and whose defense is that somebody set him up. Now, you want that to go through, but you don't want to disclose who kicked it all off. It's critical to the record.

**[PROSECUTOR]:** We're not prepared to disclose.

**THE COURT:** Then on my own motion the charge is dismissed.

**[PROSECUTOR]:** For the record, your Honor, the State requests without prejudice.

**[DEFENSE COUNSEL]:** Oh no.

**THE COURT:** With prejudice. The jury has been sworn.

¶ 8. The State appeals, arguing that the trial court erred when it failed to comply with the State's request to hold an in camera inspection under Wis. Stat. § 905.10(3)(b) to determine if the confidential informant could provide relevant testimony necessary to a fair determination on the issue of guilt or innocence. Additionally, the State argues that if we reverse the trial court's order of dismissal under § 905.10, then Norfleet may be retried without violating the prohibition against double jeopardy.

### DISCUSSION

¶ 9. In reviewing a trial court's conclusion following an in camera interview, the scope of review is whether the trial court's decision is a reasonable exer-

cise of discretion. *State v. Outlaw*, 108 Wis. 2d 112, 128–29, 321 N.W.2d 145 (1982); *State v. Larsen*, 141 Wis. 2d 412, 419, 415 N.W.2d 535 (Ct. App. 1987). "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).

### *In Camera Hearing*

■

¶ 10.    The evidentiary rule in question in this case is Wis. Stat. § 905.10(3)(b) which provides, in part:

> (b) *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case [and] the . . . state . . . invokes the privilege, the judge shall give the . . . state . . . an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony . . . . If the judge finds that there is a reasonable probability that the informer can give the testimony, and the . . . state . . . elects not to disclose the informer's identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion.

The rule recognizes the State's privilege with respect to informers and recognizes the reality that informers are an important aspect of law enforcement and that the anonymity of informers is necessary for their effective use. *Outlaw*, 108 Wis. 2d at 121. However, in the

comments of the Wisconsin Judicial Council Committee, which formulated our evidentiary rules, the committee stated:

> The informer privilege . . . may not be used in a criminal prosecution to suppress the identity of a witness when the public interest in protecting the flow of information is outweighed by the individual's right to prepare his defense.

*Outlaw*, 108 Wis. 2d at 121 (citation omitted).

■

¶ 11.   Under WIS. STAT. § 905.10(3)(b), the defendant must make a threshold showing that "an informer may be able to give testimony." This threshold showing "does not place a significant burden upon the party seeking disclosure." *Outlaw*, 108 Wis. 2d at 125. There need only be a showing that an informer may be able to give testimony necessary to a fair trial. *Id.* at 126. The proposed testimony must be "necessary to *support* the theory of the defense." *Id.* at 141; *State v. Hargrove*, 159 Wis. 2d 69, 75, 469 N.W.2d 181 (Ct. App. 1990).

■

¶ 12.   Once a showing is made, "it behooves the state to either disclose the identity of the informer or avail itself of the opportunity to offer proof of what in actuality the informer can testify about." *Outlaw*, 108 Wis. 2d at 126. This is the opportunity for the State to show that the informer cannot give testimony necessary to a "fair determination" of the guilt or innocence of the defendant. *Id.* "[T]he trial judge's role is limited to the relevance and admissibility of the testimony." *Id.* "Credibility may be assumed, but only for the purpose of testing relevancy and admissibility. To make a more

extensive inquiry into credibility at this stage of the proceedings would usurp the function of the jury." *Id.* at 126–27.

¶ 13. Once there is a finding, in the exercise of appropriate judicial discretion, that the informer's testimony is relevant and admissible on an issue material to the accused's defense and, hence, reasonably necessary on the question of guilt or innocence, the balance is irretrievably tipped to the side of disclosure. *Id.* at 128; *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). The in camera mechanism is intended to determine with reasonable accuracy whether the informer's testimony is necessary to the defendant's fair trial. If it is, the privilege is at an end, and the State must then balance the desirability of proceeding with a particular prosecution, as compared to suffering the damage of having a trusted informer unmasked. *Outlaw*, 108 Wis. 2d at 137.

¶ 14. In this case, the trial court reasonably exercised its discretion in concluding that the defendant not only made the threshold showing but that the informant's testimony was critical to the defendant's fair trial. The decision was based on the following facts and evidence presented at trial: (1) the theory of the defense that Norfleet was set up; (2) the extremely late disclosure of an unidentified fingerprint, by the State, to defense counsel; (3) the detective's testimony revealing that the informant was a material witness; and (4) the possibility that the informant planted the contraband. As a result, the trial court had enough information at this point to reasonably determine that Norfleet

[s]hould have an opportunity to cross-examine this informer because the informer may very well be the one who placed [the cocaine] there if it wasn't the defendant *and the jury is entitled to consider that.* (Emphasis added.)

¶ 15. At this point in the trial, any testimony the informant would give in camera was relevant and material to the accused's defense and reasonably necessary on the question of guilt or innocence. The only objective then of conducting an in camera hearing would be for the judge to determine the credibility of the informant, which would usurp the function of the jury.

¶ 16. The State argues for a literal application of the statute, even though there is nothing to be gained by implementing the in camera mechanism in this particular situation. Additionally, the State wants the dismissal reversed based on this perceived error; however, we cannot agree. The trial court used a logical rationale in arriving at this conclusion, even going so far as to give the State the opportunity to explain why it did not want to disclose. Therefore, we conclude that the trial court's decision was a reasonable exercise of discretion in determining that there was a reasonable probability that the confidential informant could provide relevant testimony necessary to a fair determination on the issue of guilt or innocence.

## CONCLUSION

¶ 17. The trial court's decision not to hold an in camera hearing was a reasonable exercise of discretion under the circumstances of this case. The informant's testimony was necessary for a fair determination on the issue of guilt or innocence. Because we conclude that

the trial court's order of dismissal was not in error, we need not address the double jeopardy issue.

*By the Court.*—Judgment affirmed.