STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Phonesavanh VANMANIVONG, a/k/a Sing Chen, Defendant-Appellant.

Supreme Court

*No. 00–3257–CR. Oral argument September 12, 2002.—Decided May 14, 2003.*

2003 WI 41

(Also reported in 661 N.W.2d 76.)

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *John J. Grau* and *Grau Law Office,* Waukesha, and oral argument by *John J. Grau.*

¶ 1. JON P. WILCOX, J. This case is before this court on a petition for review filed by the State of Wisconsin. The State seeks review of a published opinion of the court of appeals, *State v. Vanmanivong,* 2001

WI App 299, 249 Wis. 2d 350, 638 N.W.2d 348, which conditionally reversed five convictions of delivering cocaine to undercover officers and remanded the case to the circuit court for a hearing on whether the identities of two confidential informers should have been disclosed. A jury found the defendant, Phonesavanh Vanmanivong, a/k/a Sing Chen (Vanmanivong), guilty of eight counts of delivering cocaine in violation of Wis. Stat. § 961.41(1)(cm)1 (1999–2000).[1] Before trial, defense counsel requested disclosure of the identities of the State's two confidential informants. The Sheboygan County Circuit Court, L. Edward Stengel, Judge, after receiving affidavits from the informers and soliciting an unsworn memo from law enforcement, found, in camera, that disclosure of the informers' identities was not warranted and denied the motion. After Vanmanivong was convicted, he appealed his convictions on the basis that the circuit court had erroneously exercised its discretion by failing to follow the procedural requirements of Wis. Stat. § 905.10(3)(b). The court of appeals found the circuit court erred by relying upon an unsworn memo with regard to the five convictions based on alleged transactions where an informant was involved. It reversed and remanded the case for another in camera hearing in which the circuit court would take testimony on the identity of the individual who sold drugs to the undercover officers and determine if disclosure of the informers' identities was warranted. We reverse the decision of the court of appeals.

¶ 2. This case presents two issues. First, we consider whether the court of appeals applied the correct legal standards in analyzing the circuit court's in cam-

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

era procedure. Second, if, as both parties now agree, the circuit court erred in relying upon an unsworn memo in its decision to deny the defense motion to disclose the identities of the confidential informers, we consider whether such error was harmless.

¶ 3. We reverse the court of appeals' decision, because we find that the court of appeals erred in its statement of Wisconsin law regarding disclosure of informers' identities. Also, we agree with the court of appeals that the circuit court erred in relying upon an unsworn memo as basis for its decision, but we reverse the court of appeals' decision because we find that error to be harmless in the context of this case.

I

¶ 4. The following facts are relevant for purposes of this review. Beginning in February 1999, undercover police officers began purchasing crack cocaine from a person they knew only as "Shorty." From February 1999 through June 1999, Special Agents Neil McGrath and Thomas Sturdivant of the Division of Narcotics Enforcement in the Wisconsin Department of Justice participated in eight drug buys from Shorty. Two confidential informants who had purchased cocaine from Shorty on previous occasions introduced the agents to Shorty. These informants worked independently, one working with Agent McGrath and the other with Agent Sturdivant.

¶ 5. A confidential informant was present at five of the eight drug transactions with Shorty conducted by either Agent McGrath or Agent Sturdivant. Agent McGrath had a confidential informer identified as DDI-

3444[2] with him when he bought cocaine from Shorty on February 8, 1999 (Count 1), and February 23, 1999 (Count 3). Agent Sturdivant handled six cocaine buys from Shorty and a different informer, DDI-3432, was present on three of those occasions. DDI-3432 arranged and went along with Agent Sturdivant for buys occurring on February 18, 1999 (Count 2), February 25, 1999 (Count 4), and March 5, 1999 (Count 5). On March 11, 1999 (Count 6), March 25, 1999 (Count 7), and May 18, 1999 (Count 8), Agent Sturdivant arranged and completed the last three buys from Shorty without the assistance of a confidential informant.

¶ 6. Before the buy on February 23, 1999, Agent McGrath positively identified a photograph of a Pao Moua as the person he knew as Shorty, who sold him cocaine. McGrath testified at trial that the photo was provided after a computer database linked the nickname "Shorty" with the name Pao Moua. Beginning with the report dated February 18, 1999, both Agent McGrath and Agent Sturdivant referred to Shorty as Moua in their reports and used the names interchangeably.[3] Sturdivant testified at trial that he did not come up with Moua's name independently; rather, he began using the name Moua in his reports because it was given to him by Agent McGrath or other officers.

---

[2] DDI stands for "dangerous drug informant," referring to confidential informers that law enforcement officials enlist to assist them with drug investigations.

[3] Although the first report using Moua as the name for Shorty is dated before Agent McGrath made the photo identification and is written by Agent Sturdivant, the document reflects that Sturdivant actually signed the report on March 8, 1999, after the identification by McGrath. The report by Agent McGrath, as brought out at trial, was actually signed on March 2, 1999.

¶ 7. Sometime before May 18, 1999, the officers realized Shorty could not be Pao Moua, because Detective Kirk Bloedorn found out Pao Moua had been incarcerated out of state during the entire time the drug investigation took place. Bloedorn later testified to that effect at Vanmanivong's trial. The agents had doubts about Shorty's identity from early on in the investigation, so the officers conducted surveillance on several occasions between April 1999 and June 1999 to ascertain Shorty's true identity. In April 1999, Detective Bloedorn participated in a traffic stop of three Asian individuals. One of the people stopped identified himself as Sing C. Chen, and gave a date of birth of June 17, 1968. Sing Chen gave his address as 912 Ontario Avenue in Sheboygan, Wisconsin. Later, photographs of this group were taken in the area of 912 Ontario Avenue. From these photographs, Agent McGrath was able to positively identify Sing Chen as Shorty. In his report regarding the final drug buy on May 18, 1999, Agent Sturdivant then referred to the person who sold him drugs only as Shorty. He later testified that he did so because he recognized Shorty by sight, but was not sure of his actual name at the time.

¶ 8. In June 1999, Sing Chen[4] was charged with eight counts of selling cocaine to undercover officers. Before trial, the defendant filed a motion pursuant to Wis. Stat. § 905.10, requesting that the identities of the two confidential informants be disclosed. He asserted

[4] According to the record, Sing Chen also identified himself as Noy Sang. At sentencing, the defendant finally provided his given name as Phonesavanh Vanmanivong, and stated that Sing Chen and Noy Sang were merely nicknames. Detective Bloedorn testified at Vanmanivong's trial that the defendant informed him, "Noy and Chen in his country stand for short or small."

that the informers might be able to provide key testimony important to his defense of misidentification. The defendant, in his offer of proof, referenced the police reports in which Pao Moua was identified as the person who sold the drugs to the agents and a police report in which an informer identified Shorty as a "Hmong male in his mid 20's [sic]." Vanmanivong is over thirty years old. Vanmanivong argued that identity was a determinative issue and that because informants were present at several of the drug sales, the informers "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence." At a hearing on the motion, the State conceded that Vanmanivong's offer of proof met the initial burden under Wis. Stat. § 905.10(3)(b) and acknowledged that the next step would be an in camera inspection. The State offered to have the informants present to testify and identify Vanmanivong from a photo lineup. The circuit court rejected such an approach and requested, instead, that law enforcement conduct a photo lineup and submit affidavits to the court. The court requested a procedure be done by which the informants would "identify who they are referring to as Shorty."

¶ 9. On July 29, 1999, and August 4, 1999, the two informers were interviewed separately and question-and-answer style affidavits from these interviews were subsequently signed by the informers and submitted to the court. These affidavits state that the informers were shown a photograph. Both informers identified the person in the photograph as the person they knew as Shorty. Unfortunately, the photograph used for the photo lineup was not submitted to the court, and no other affidavits were provided with the informers' affidavits to reflect that the photograph shown to the

informers was, in fact, a photograph of the defendant.[5] Following submission of the affidavits, the court, by its own initiative and without consulting either of the parties, contacted law enforcement and requested additional clarifying information.

¶ 10. The follow-up communications to the court consisted of two typed memos, purportedly from Detective Bloedorn. These memos were not affidavits, but rather unsworn memos from Detective Bloedorn to the court. One of these memos (Exhibit 1) discussed information about the cooperation of a confidential informant, identified in the memo as Lanh Neauone and CI-3456. This document was a forgery. At trial, the parties stipulated that Exhibit 1 was, in fact, created by the defendant. Detective Bloedorn testified that he did not create Exhibit 1. The other memo (Exhibit 43), however, was submitted by Detective Bloedorn to the court and explains the initial misidentification of Shorty and the informers' identification of Shorty.

---

[5] As noted by the court of appeals, there also appear to be inconsistencies with the informers' affidavits. The case activity reports filed by law enforcement in this case identify two confidential informers as DDI-3444 and DDI-3432. However, the affidavits have different identification numbers. In one affidavit, Detective Bloedorn states: "I will be interviewing a Confidential Informant and will be putting his CI number at the top of the report for reference." Both affidavits have handwritten numbers at the top right corner, CI #1010 and CI #1068, different from the numbers used in the case activity reports. No explanation was provided for these inconsistencies. Nonetheless, the affidavits do make clear that these informants worked with either Agent Sturdivant or Agent McGrath and introduced the agent with whom they worked to the person they knew as Shorty. Thus, these discrepancies are immaterial.

¶ 11. On October 22, 1999, the circuit court made an oral ruling regarding Vanmanivong's motion for disclosure. The court stated:

> After reviewing the initial affidavits, I gained little understanding from what I had originally in reviewing all of the reports, and I then requested further clarification from the investigative agency as to the informant's understanding or knowledge of the identity of the defendant, and I received a follow-up communication, and I believe you must have my copy.
>
> I have asked [the deputy district attorney] whether there was any objection on behalf of the State of that being furnished to [defense counsel]. He says there [is] not, and that's been now given to [defense counsel]. My review of this affidavit, this statement, although not under oath, I'm satisfied provides the necessary trustworthiness. With that information it appears that the informants do not have any additional information as to the identity of the defendant.
>
> The confusion that appears from the original identification . . . is not activities that involve the confidential informants but apparently are activities that centered around the actions of law enforcement. With that clarification and my review of the documentation, I do not believe that the disclosure of the identity of the informants in this case would be necessary for a fair or complete determination of the issues, and the interests of justice does [sic] not require their disclosure at this point, so the request for disclosure is denied.

¶ 12. As noted by the court at the oral ruling, the unsworn memo used in the in camera procedure was turned over to defense counsel before trial. At trial, Agent McGrath, Agent Sturdivant, and Detective Bloedorn testified. They were examined and cross-examined regarding the investigation, the cocaine transactions, the misidentification of Pao Moua and the

213

subsequent identification of the defendant. All three identified the defendant, Vanmanivong, a/k/a Sing Chen, as the person whom they had been investigating. Agent McGrath and Agent Sturdivant testified that the defendant was Shorty and the person who had been selling them cocaine. These agents testified that their contacts with Shorty often occurred at close range, in vehicles, and that there were opportunities to see Shorty with the light on in the vehicle. Detective Bloedorn was cross-examined on information provided in Exhibit 43—the unsworn memo used during the in camera procedure. Defense counsel, using Exhibit 43, attempted to raise doubt as to when the traffic stop involving Detective Bloedorn actually occurred. Defense counsel also used Exhibit 42, Detective Bloedorn's report regarding the traffic stop and surrounding investigation, for that line of questioning. Following this cross-examination, the defense moved for all the defense exhibits, including Exhibit 43, to be moved into evidence. The circuit court granted this motion. Vanmanivong was subsequently convicted on all eight counts of delivering cocaine.

¶ 13. Vanmanivong appealed his convictions, claiming that the circuit court erred in the exercise of its discretion by failing to comply with the mandates of Wis. Stat. § 905.10(3)(b). The court of appeals affirmed three of the convictions, finding that because the confidential informers were only present at five of the eight drug buys, the identity of those informants related only to those five counts. As such, the convictions on Counts 6–8 were affirmed because the informers were not present at those transactions.

¶ 14. However, finding that the circuit court erred in relying upon an unsworn memo in determining that the informers' identities need not be disclosed, the court

214

of appeals conditionally reversed the remaining five counts and remanded the case for a retrospective in camera hearing at which the circuit court would "take the testimony of the two informants regarding the identity of 'Shorty' and the identity of the individual who sold drugs to the undercover officers." *Vanmanivong,* 249 Wis. 2d 350, ¶ 19. We reverse.

## II

¶ 15. This case is complex, both legally and factually. As noted, there are two issues presented to this court. The first issue we address is that of the standards used by the court of appeals in its conditional reversal of five of Vanmanivong's convictions. In reviewing a circuit court's decision following an in camera hearing or submission of affidavits under Wis. Stat. § 905.10, the scope of review is whether the trial court properly exercised its discretion. *See State v. Outlaw,* 108 Wis. 2d 112, 128–29, 321 N.W.2d 145 (1982); *State v. Norfleet,* 2002 WI App 140, ¶ 9, 254 Wis. 2d 569, 647 N.W.2d 341; *State v. Larsen,* 141 Wis. 2d 412, 419, 415 N.W.2d 535 (Ct. App. 1987). "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *Norfleet,* 254 Wis. 2d 569, ¶ 9 (quoting *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)) (internal quotations omitted).

¶ 16. In this case, however, we are called upon to interpret Wis. Stat. § 905.10 to determine what standards are appropriate for the determination whether an

informant's identity must be disclosed. Such a question of statutory interpretation presents a question of law that this court reviews de novo, "benefiting from the analyses of the circuit court and the court of appeals." *State v. Head,* 2002 WI 99, ¶ 41, 255 Wis. 2d 194, 648 N.W.2d 413 (citing *State v. Busch,* 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998)).

¶ 17. The defendant also asserts that the circuit court's error implicates his due process rights, specifically, his right to present a defense. When a defendant's constitutional right to a fair trial is implicated, it raises a question of law which this court reviews de novo. *See State v. Green,* 2002 WI 68, ¶ 20, 253 Wis. 2d 356, 369, 646 N.W.2d 298; *see also State v. Littrup,* 164 Wis. 2d 120, 126, 473 N.W.2d 164 (Ct. App. 1991) (stating "[S]ince this appeal deals with the constitutional questions of whether [the defendant's] rights to due process . . . were protected, the appeal presents questions of law. We review questions of law *de novo* without deference to the trial court") (citations omitted).

¶ 18. The statute at issue here, Wis. Stat. § 905.10, is not new; its policies have been longstanding and we have interpreted its language on previous occasions, most specifically in *Outlaw.* Section 905.10(1) of the Wisconsin Statutes recognizes the state government's general privilege regarding the protection of the identities of confidential informants.[6] This rule

---

[6] Wisconsin Stat. § 905.10(1) provides:

**Identity of informer.** (1) Rule of Privilege. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

recognizes the privilege, and also "the reality that informers are an important aspect of law enforcement and that the anonymity of informers is necessary for their effective use." *Outlaw,* 108 Wis. 2d at 121. The seminal case on the government's confidential informant privilege is the United States Supreme Court decision in *Roviaro v. United States,* 353 U.S. 53 (1957). In that case, the Supreme Court noted the purposes served by such a privilege:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id.* at 59.

¶ 19. The Court found that the privilege had limitations stemming from its purpose and the requirements of fundamental fairness. *Id.* at 60. As such, the Court held: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. However, as noted by this court in *Outlaw,* the Court did not "set up a mechanism for determining when an accused's right to a fair trial was infringed by the prosecution's assertion of the informer privilege." *Outlaw,* 108 Wis. 2d at 121–22. Rather, in *Roviaro,* the Court stated:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

> Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro,* 353 U.S. at 62. Several years later, in *Rugendorf v. United States,* 376 U.S. 528, 534–35 (1964), the Supreme Court confirmed the above balance from *Roviaro* as the appropriate test for determining whether an informant's name must be disclosed.

¶ 20. Wisconsin codified the government privilege for informants in Wis. Stat. § 905.10, and recognized the same policies as those in *Roviaro.* In *Outlaw,* 108 Wis. 2d at 121, this court specifically held that § 905.10(3)(b) is a Wisconsin rule and grounded on Wisconsin precedent, but that the rule is consistent with *Roviaro.* Section 905.10(3)(b) is the provision at issue in this case. It describes an exception to the privilege and provides a mechanism through which courts may determine whether the privilege stands in a particular case. Section 905.10(3)(b) provides:

> *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and the federal government or a state or subdivision thereof invokes the privilege, the judge shall give the federal government or a state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony,

218

and the federal government or a state or subdivision thereof elects not to disclose the informer's identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion. . . . Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the federal government, state or subdivision thereof. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera at which no counsel or party shall be permitted to be present.

¶ 21. The State in this case argues that the court of appeals erred in applying the precedent of this court regarding the interpretation of Wis. Stat. § 905.10(3)(b). In particular, the State argues that ¶ 14 of the court of appeals' decision stated an erroneous standard by relying upon the lead opinion in *Outlaw,* rather than the majority opinion, for the test to be applied. The court of appeals, in that passage, cited the lead opinion from this court's decision in *Outlaw,* stating:

. . . a trial court errs in the exercise of its discretion when it weighs the evidence revealed by the informer or views the case in hindsight. What is, in fact, helpful to a defendant is not a decision that should be made by the trial judge under Wis. Stat. § 905.10(3)(b). The trial court's duty in the exercise of discretion is *only to determine that the testimony the informer could give is relevant and admissible in respect to an issue material to the accused's defense and hence is reasonably necessary to a fair determination of guilt or innocence.* The judge's discretionary function under § 905.10(3)(b), if it cannot be said that the proffered testimony is incredible as a matter of law, is similar to that in any jury

trial; the judge's duty is merely to determine competency, relevancy and admissibility.

*Vanmanivong,* 249 Wis. 2d 350, ¶ 14 (emphasis added) (internal citations omitted).

¶ 22. As noted, *Outlaw* was a split decision, with concurrences by Justice Callow and Justice Steinmetz that garnered a majority of the justices for part of the opinion. *See Outlaw,* 108 Wis. 2d at 138–142. In that case, this court was asked to determine what the obligations of the State and the defendant were when the informer privilege was invoked by the State. *Id.* at 113. The defendant in *Outlaw* was charged with three counts of delivery of cocaine to an undercover agent. *Id.* at 115. During trial, the agent admitted five people were present just before the transaction took place, a change from his prior statements. *Id.* at 116. The defense established that the fifth person was an informant and asked the agent the informer's name. *Id.* The State invoked the informer's privilege. *Id.* The circuit court denied a motion for disclosure without holding an in camera hearing. *Id.* at 116–17. The defendant was convicted and appealed. *Id.* at 118. The court of appeals remanded the case for a hearing. *Id.* Upon remand and following an in camera hearing, the court found that disclosure was not required because there was not a reasonable probability that the informer's testimony would be helpful to the defense. *Id.* at 119. The defense theories were alibi and mistaken identity. *Id.* at 118. Although the court found that informer could not identify Outlaw, the issue of identity was convincingly testified to by the agent, so the testimony, reviewed in total, would not be helpful. *Id.* at 119. The court of appeals reversed and remanded the convictions. *Id.* at 119–20. The State then petitioned this court for review,

arguing that the court of appeals applied an erroneous standard. *Id.* at 120. Thus, as in this case, the court was left to determine the appropriate standards to be applied.

¶ 23.　In *Outlaw,* the court split on the determination of an appropriate test. Two years later, this court explained the results of *Outlaw* in *State v. Dowe,* 120 Wis. 2d 192, 352 N.W.2d 660 (1984). There, we held that when a majority of a multimember court takes a position in a concurrence, the opinion of the court and the controlling law on that point is the concurrence. *Id.* at 194–95. In *Outlaw,* the concurrence (and majority of justices) specifically rejected some of the language of the lead opinion regarding the test to be applied. Justice Callow, writing in concurrence, stated:

> I specifically reject the language in the majority opinion stating the proper test for disclosure of an informer's identity to be whether the informer's testimony was relevant and admissible to a material issue. I conclude that an essential condition precedent to disclosure is that the informer's testimony be necessary to the defense.

*Dowe,* 120 Wis. 2d at 194 (quoting *Outlaw,* 108 Wis. 2d at 141) (emphasis omitted). This court in *Dowe* then held:

> In *Outlaw,* the lead opinion represents the majority and is controlling on the issues of the state's burden and the existence of abuse of discretion by that circuit court. However, the concurring opinions represent the majority on the issue of the test to be applied and therefore control on this point.

*Dowe,* 120 Wis. 2d at 194–95.

¶ 24. We now reaffirm our holding in *Dowe* that the concurrence in *Outlaw* states the test to be applied in determining whether an informant's identity must be disclosed. Based on the language of the concurrence, a defendant must show that an informer's testimony is necessary to the defense before a court may require disclosure. *See Outlaw,* 108 Wis. 2d at 139 (Callow, J., concurring). "Necessary" in this context means that the evidence must support an asserted defense to the degree that the evidence could create reasonable doubt. *See id.* at 141–42. The court of appeals in the instant case relied upon the lead opinion for a point of law upon which the concurrence-majority opinion controls. As such, the court of appeals erred in its statement of the law.

¶ 25. The court of appeals appears to acknowledge the concurring opinion as controlling to some degree when it states a second part to its analysis:

> If the trial court determines that the confidential informants' testimony is not relevant and admissible with respect to an issue material to Vanmanivong's defense, the trial court may reinstate the judgments of conviction. If, however, the trial court determines that the confidential informants' testimony is relevant and admissible, the trial court must then determine if the disclosure is necessary to Vanmanivong's defense.

*Vanmanivong,* 249 Wis. 2d 350, ¶ 20 (citing *Outlaw,* 108 Wis. 2d at 141; *Dowe,* 120 Wis. 2d at 194–95). However, this statement does not eliminate the problems raised by ¶ 14. The court of appeals mixed and matched what is to be a single test applied as described by the concurrence in *Outlaw.*

¶ 26. The court of appeals in ¶ 14 follows the same errant path as the lead opinion in *Outlaw* by

equating relevancy and admissibility with necessity. As the majority in the concurrence of *Outlaw* stated, "[T]here is a significant difference between these terms; something may be relevant and admissible, but not necessary." *Outlaw,* 108 Wis. 2d at 139 (Callow, J., concurring). For example, where a defendant claims misidentification, this court noted in *Outlaw:* "If the in camera inquiry results in the judge concluding the informer can positively identify the defendant, such testimony meets the test enunciated [in the lead opinion]." *Id.* at 140–41. Such testimony meets the "relevant and admissible" test, but is not necessary to the defense, because it does not support the theory of the defense. Justice Steinmetz pointed out that a similar problem arises for evidence that is "merely cumulative." *Id.* at 142 (Steinmetz, J., concurring).

¶ 27. The interpretation of § 905.10 in the *Outlaw* concurrence is consistent with the balancing principles described in *Roviaro.* The standard, as stated by the concurrence, has consistently been upheld by this court and other Wisconsin courts. *See State ex rel. Green Bay Newspaper Co. v. Circuit Court, Branch 1, Brown County,* 113 Wis. 2d 411, 423, 335 N.W.2d 367 (1983); *State v. Lass,* 194 Wis. 2d 591, 596, 535 N.W.2d 904 (Ct. App. 1995) (holding that the *Outlaw* concurrence is the standard and that Wisconsin's procedure is consistent with *Roviaro*); *State v. Hargrove,* 159 Wis. 2d 69, 75, 469 N.W.2d 181 (Ct. App. 1990). *Roviaro* required a balancing test, looking at the defendant's right to present a defense and the government's right to protect its informants. *Roviaro,* 353 U.S. at 60–61. *Roviaro* explicitly refused to give a specific rule, finding that the balance must be done on a case-by-case basis. *Id.* at 62. The Court in *Roviaro* found that to determine whether a defendant's right to present a defense requires disclo-

sure depends upon a balance of the circumstances of the case, including "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* We find that the *Outlaw* definition requiring the information to be "necessary" to the defense implements an appropriate balance.

¶ 28. In *Rugendorf,* the Supreme Court reaffirmed its adherence to the *Roviaro* case-by-case balancing test. *Rugendorf,* 376 U.S. at 534–35. In that case, the Court reviewed its analysis in *Roviaro. Id.* In finding that disclosure of informants' identities was not required in the case, the Court held that "we cannot say on this record that the name of the informant was necessary to his defense." *Id.* at 535. The Court also went on to find: "Never did petitioner's counsel indicate how the informants' testimony could help establish petitioner's innocence." *Id.* These findings indicate that the standard in *Outlaw* is consistent with *Roviaro.* Information that does not support the defense's theory is not helpful to the defense and cannot be essential to a fair determination of the cause from the defense perspective. The *Outlaw* concurrence dealt specifically with the defense of misidentification, the defense asserted in the present case. It stated: "[W]here identification is at issue, I would declare the evidence is not necessary to the theory of mistaken identity where the informer can identify the defendant with reasonable certainty as the participant in criminal activity." *Outlaw,* 108 Wis. 2d at 141 (Callow, J., concurring).

¶ 29. Vanmanivong has asserted that failure to follow the mandatory procedures of § 905.10(3)(b) implicates his due process rights. This argument fails for several reasons. As noted in both the *Outlaw* concur-

rence and lead opinion, the informer's privilege is a product of Wisconsin Supreme Court rule making.[7] *Outlaw,* 108 Wis. 2d at 139. The rule in Wisconsin emerged from Wisconsin precedent. *See Stelloh v. Liban,* 21 Wis. 2d 119, 126–27, 129, 124 N.W.2d 101 (1963)(first recognizing the balance of interests of the public and the person arrested and finding that the informer's identity need not always be disclosed). The privilege is one of public policy. *Larsen,* 141 Wis. 2d at 421 (citing *Stelloh,* 21 Wis. 2d at 125; *Roviaro,* 353 U.S. at 59).

¶ 30. In *Larsen,* the court of appeals analyzed the contention that failures during the in camera process violate due process. *See Larsen,* 141 Wis. 2d at 420. The court of appeals examined the United States Supreme Court decision in *McCray v. Illinois,* 386 U.S. 300 (1967), and noted, citing *Roviaro,* that the Supreme Court held that the privilege must give way when an informer's identity is essential to a fair determination of the cause, but that this was "not a requirement of the federal constitution but a court-imposed limitation upon the privilege." *Larsen,* 141 Wis. 2d at 421. Based on our holding in *Outlaw,* we agree with this interpretation. As noted in *Larsen,* "[s]ince *Roviaro,* the federal

---

[7] It should be noted that in *State v. Outlaw,* 108 Wis. 2d 112, 120–21, 321 N.W.2d 145 (1982), the court found that the rules of evidence are generally matters of state law, "to the extent that they do not impinge upon United States constitutional guarantees." Wisconsin has interpreted the due process clauses of the state and federal constitutions to be "substantially equivalent." *State v. Brown,* 85 Wis. 2d 341, 345–46, 270 N.W.2d 87 (Ct. App. 1978). Hence, for considering alleged due process violations, it is appropriate that the state and federal standards applied be consistent.

courts have consistently held that the defendant has no absolute constitutional right to disclosure of the identity of an informer." *Id.* at 421 (internal citations omitted). As will be made clear later in this opinion, in this case, the balance between the defendant's rights and the right of the state to protect its informants was adequately provided for by the procedures used at this defendant's trial. As such, we reject the defendant's claim that his due process rights were violated. As we recently stated in a similar context: "We have confidence in the circuit courts to [ ] make a proper determination as to whether disclosure of the information is necessary based on the competing interests involved in such cases." *Green,* 253 Wis. 2d 356, ¶ 35.

¶ 31. The balancing test laid out in *Roviaro* has led to a variety of interpretations. Some states have adopted a rule providing a privilege such as that in Wisconsin. *See, e.g., State v. Opupele,* 967 P.2d 265, 269 (Haw. 1998) (interpreting Hawaii's rule of privilege). Other states have simply adopted the *Roviaro* analysis. *See, e.g., State v. Jackson,* 687 A.2d.485, 486–87 (Conn. 1997). Some jurisdictions, such as the Fifth Circuit, have developed a three-part test using the facts of *Roviaro* as basis for differentiating levels of informant participation. *See United States v. Orozco,* 982 F.2d 152 (5th Cir. 1993) (holding that, after analyzing an informant's level of participation, the helpfulness of disclosure to the defense, and the government interest in nondisclosure, where an informant was present but may not have seen the transaction, disclosure was not required). All of the cases, however, perform some type of balancing test between the defendant's right to present a defense and the government's right to protect its informants. *See, e.g., United States v. Bender,* 5 F.3d 267, 270 (7th Cir. 1993) (applying the *Roviaro* balance

and finding "[the defendant] has failed to demonstrate that he possesses a genuine need of informant disclosure that outweighs the public's interest"). Wisconsin's rule calls for the same type of balance.

■

¶ 32. Based upon the above analysis of the law, the following procedures should be used by Wisconsin circuit courts when determining whether an informant's identity should be disclosed. Once a defendant has made an initial showing that there is a reasonable probability that an informant may be able to give testimony necessary to the fair determination of the issue of guilt or innocence, the state has the opportunity to show, in camera, facts relevant to determining whether or not the informant can, in fact, provide such testimony. If, and only if, the court determines that an informer's testimony is necessary to the defense in that it could create a reasonable doubt of the defendant's guilt in jurors' minds, must the privilege give way. *Outlaw,* 108 Wis. 2d at 141–42 (Callow, J., concurring).

III

■

¶ 33. With the benefit of these above-stated standards, we now move to the second issue: the application of the procedures in this case. The parties here agree, as do we, that it was error for the circuit court to rely upon an unsworn memo in determining whether the identities of the confidential informants should be disclosed. Section 905.10(3)(b) specifically states: "The showing [by the State] will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if the judge finds that the matter cannot be

resolved satisfactorily upon affidavit." Under the plain language of the statute, affidavits or testimony are the two options given the circuit court. Both of these options provide for sworn evidence. If the judge finds that the affidavits provided are inadequate, as in this case, the court may then take testimony. By relying upon an unsworn memo, the circuit court here failed to follow the statute. Additionally, we note that the danger of relying upon unsworn evidence played out in this very case. Here, two memos purportedly from Detective Bloedorn were submitted to the court. One of those memos was a forgery created by the defendant. Fortunately, here, the forgery was discovered. We find, however, that relying upon unsworn evidence for purposes of the in camera process under Wis. Stat. § 905.10(3)(b) is error. This memo, at least as used during the in camera procedure, shall not be considered as evidence to be relied upon in this review.

¶ 34. We also find that the circuit court erred by independently requesting additional information from law enforcement, a request that led to receipt of the unsworn memo from Detective Bloedorn. The circuit court relied upon that independently gathered information to make a ruling on disclosure. Again, if the affidavits collected are inadequate, the judge has the option of hearing testimony. Wis. Stat. § 905.10(3)(b). Judges are generally prohibited from independently gathering evidence by the rules of judicial ethics. Supreme Court Rule 60.04(1)(g) prohibits a judge from engaging in ex parte communications concerning a pending action, with several exceptions not applicable

228

here.[8] The Comment to the rule states, in part, "A judge must not independently investigate facts in a case and must consider only the evidence presented." *Id.* A judge must not go out and gather evidence in a pending case. To do so is error. The judge here did disclose his communication with law enforcement to both parties before ruling upon the motion for disclosure. He also provided the unsworn memo to the defense before trial. These were appropriate actions under SCR 60.04. *See* Comment to SCR 60.04(1)(g). These actions, though, cannot balance the potential harm done by seeking evidence independently and then relying upon such evidence in making a ruling.

## IV

¶ 35. Although we agree with the court of appeals that error occurred in this case, we find that the analysis does not end there. Rather, we move to an examination for harmless error. In *State v. Harvey,* 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189, this court adopted the United States Supreme Court's decision in *Neder v. United States,* 527 U.S. 1 (1999), which reaffirmed the harmless error test stated in *Chapman v.*

---

[8] SCR 60.04 (2000). A judge shall perform the duties of judicial office impartially and diligently.

. . . .

(1) In the performance of the duties under this section, the following apply to adjudicative responsibilities:

. . . .

(g) A judge shall accord to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to law. A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding [except as listed below].

229

*California,* 386 U.S. 18 (1967). In *Neder,* the Supreme Court confirmed the *Chapman* standards: "That test, we said, is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Neder,* 527 U.S. at 15 (quoting *Chapman,* 386 U.S. at 24). In this case, the errors at issue are procedural. First, the circuit court erred by independently seeking additional evidence during the in camera process. Second, the court accepted and relied upon an unsworn memo in ruling upon the motion for disclosure. We now must determine whether or not these errors contributed to Vanmanivong's convictions. We examine the nature of the errors complained of and their effect, if any, on the trial.

¶ 36. Wisconsin courts have accepted that harmless error analysis is appropriate for cases such as this. In our recent decision in *Green,* we compared the situation where a defendant seeks privileged psychological records to the situation of government informant protection, finding that similar standards and policy balances were applicable. *See Green,* 253 Wis. 2d 356, ¶¶ 24–25, 29. In *Green,* the issue was whether the defendant was entitled to an in camera review at all. *Id.,* ¶ 20. We noted, however, that even if the defendant made the showing necessary to get an in camera review, the defendant would not automatically be entitled to a remand for such a review, because the defendant must still show the error was not harmless. *Id.* Similarly, in *State v. Ballos,* 230 Wis. 2d 495, 501–02, 602 N.W.2d 117 (Ct. App. 1999), the court of appeals found that failure to conduct an in camera inspection, even assuming it would have led to allowing the defendant to utilize records at trial, still constituted harmless error because the information came out through testimony at trial.

Thus, we find that harmless error analysis is applicable to the type of case we have before us.

¶ 37. We disagree with the dissent's argument that harmless error analysis is inappropriate in this case. The dissent misconstrues the error here to make it fit the mold of *State v. Rizzo.* In *Rizzo,* 2002 WI 20, ¶¶ 4–6, 250 Wis. 2d 407, 640 N.W.2d 93, this court found that the circuit court had never applied the appropriate standards to determine if the defense was entitled to a pretrial psychological examination, because the State had represented to the court that it was not presenting *Jensen* evidence, obviating the need for such a determination. There, this court had no record upon which to determine whether the defense was entitled to the pretrial examination or not, because the circuit court had never ruled upon the *Maday* factors. *See id.,* ¶ 44. The court did not apply harmless error analysis because the court never exercised its discretion to make the determination. *See id.,* ¶¶ 44–47. Here, however, as will be discussed, the circuit court did exercise its discretion and we do have an appropriate record upon which to do a harmless error analysis.

¶ 38. We note that the procedural posture in *Green* is different than that found in the case at hand. In *Green,* and the *Ballos* case upon which it relied, the issue was whether a defendant was entitled to an in camera review at all. *See Green,* 253 Wis. 2d 356, ¶ 20; *Ballos,* 230 Wis. 2d 495 at 497. In such cases, the burden falls upon the defendant to show that he or she is entitled to an in camera review. *Green,* 253 Wis. 2d 356, ¶ 20. In reviewing that decision for harmless error, then, the burden was placed upon the defendant to show the error was not harmless. *Id.* In this case, however, there is no dispute over the defendant's en-

titlement to an in camera review. Both sides agree that the prima facie showing was satisfied. Here the problem arises at the next step in the analysis—whether the disclosure of the informants' identities was necessary.

¶ 39. Under *Outlaw,* the State has the opportunity to present evidence that an informant's testimony is unnecessary. *Outlaw,* 108 Wis. 2d at 126; *see also Dowe,* 120 Wis. 2d at 193–94. In *Outlaw,* 108 Wis. 2d at 127, this court held that the State did not have a burden of proof requiring it to show "beyond a reasonable doubt that the informer's testimony would not be helpful to the defense." However, if the State does not want the case dismissed, the State must reveal what the informants' testimony would be. *Id.* Given that the State bears this responsibility, and because the State benefited from the errors here, we deem it appropriate for the State to bear the burden of proving harmless errors that arise at this step in the analysis.

¶ 40. In *Harvey,* this court agreed with prior Wisconsin harmless error cases in finding that the beneficiary of the error should bear the burden of showing the error to be harmless.[9] *Harvey,* 254 Wis. 2d 442, ¶¶ 40–41 (citing *State v. Dyess,* 124 Wis. 2d 525, 543,

[9] The dissent suggests that *Harvey* is somehow incompatible with the *Green* case. Dissent, ¶ 54 n.3. However, these cases are procedurally quite different. As we have noted, *Green* deals with the issue of whether a defendant is entitled to an in camera review in the first place. *See State v. Green,* 2002 WI 68, ¶ 20, 253 Wis. 2d 356, 646 N.W.2d 298. *Harvey* reviews harmless error analysis in light of an erroneous jury instruction. *See State v. Harvey,* 2002 WI 93, ¶ 35, 254 Wis. 2d 442, 647 N.W.2d 189. Whatever differences in these cases may exist are of no consequence to our present analysis. *Harvey* represents the general rule as it adopted the burden of proof used in previous

370 N.W.2d 222 (1985)) ("[t]he burden of proving no prejudice is on the beneficiary of the error, here the state"). Here the State benefited from the errors that occurred, in that the decision not to disclose the identities of the informants was based upon an unsworn affidavit received at the request of the circuit court. Thus, it is appropriate for the State to bear the burden of proving harmless error.

■

¶ 41. As discussed, harmless error analysis requires, for a constitutional error or other error, this court to determine whether " 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Harvey,* 254 Wis. 2d 442, ¶ 44 (quoting *Neder,* 527 U.S. at 15–16).[10] This court also has noted that it is the responsibility of the court to apply such a test under Wis. Stat. § 805.18(2), which provides:

Wisconsin cases. *Id.,* ¶ 41. Further, based on *Outlaw* and Wis. Stat. § 905.10(3)(b), it is appropriate for the State to bear the burden in this case. We also note that the *Harvey* position has been previously accepted as a general proposition by this court: "[T]his court's harmless error analysis places upon the beneficiary of the error the burden of demonstrating that the error is harmless." *State v. Sanchez,* 201 Wis. 2d 219, 241, 548 N.W.2d 69 (1996) (Abrahamson, J., concurring).

[10] Following the *Neder* case, this court in *Harvey* reformulated the test for purposes of harmless error analysis in the context of jury instructions, stating the test to be whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Harvey,* 254 Wis. 2d 442, ¶¶ 46, 49 (citing *Neder v. United States,* 527 U.S. 1 (1999)) (internal quotations omitted). However, the *Neder* formulation of the test maintained the standards stated in *Chapman v. California,* 386 U.S.18 (1967). *See id.,* ¶ 44.

No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

¶ 42. Using this test, we hold that the State met its burden and that the procedural errors committed in this case were harmless. Given the circumstances of this case, it is clear beyond a reasonable doubt that the errors did not contribute to the jury's verdict. We find that remand for a new in camera proceeding in this case would be repetitive, amassing only the same evidence already presented to the court and inevitably leading to the same result.

¶ 43. The dissent acknowledges that the nature of the error here is procedural. *See* dissent, ¶¶ 52, 53, 59. The focus of our harmless error analysis, as described in both *Harvey* and *Neder,* must be whether the circuit court's failure to follow the statutory procedures contributed to the outcome of the trial. We find that the errors here had no effect on the outcome at trial. Contrary to the dissent's assertion, we find that the "requisite determination of whether the confidential informants' testimony was 'necessary' to the defendant's defense" was made by the circuit court in this case. Dissent, ¶ 52. Unlike the *Rizzo* case, the circuit court here made a determination. The court explicitly found that divulgence of the informers' identities was not necessary. The only errors here were procedural. The court erred by using ex parte commu-

nications to solicit the memo and by then relying upon the unsworn document. Because of these procedural missteps, we have thrown out the unsworn memo for purposes of consideration in the initial in camera review. It was improperly appropriated and, because it was unsworn, it should not have been relied upon in the disclosure decision.

¶ 44. However, that memo did not disappear following the in camera review. Instead, it was turned over to the defense and the trial went forward. At trial, the defense had an opportunity, which it utilized, to cross-examine the agents and Detective Bloedorn regarding the misidentification and other information in that memo, which became Defense Exhibit 43. Defense counsel used the memo to question Detective Bloedorn about the date of a traffic stop involving Sing Chen (Vanmanivong). Defense counsel also used Exhibit 42 during that examination. Exhibit 42 is Detective Bloedorn's report on the traffic stop and the investigation, and it explained that a misidentification occurred and that the past case activity reports would have to be changed so they would no longer reflect the misidentification of Pao Moua. The agents and Detective Bloedorn withstood questioning regarding why Shorty was first identified as Pao Moua. All three confirmed that, despite the initial misidentification, following additional surveillance, the officers were able to positively identify the defendant as Shorty.

¶ 45. The circumstances of this case are different from those found in *Roviaro*. This case does not have the *Roviaro* situation where the informant was the only participant besides the defendant in the criminal event. In *Roviaro*, agents were not able to see and hear all that occurred between the informant and the defendant. *Roviaro*, 353 U.S. at 63–64. Here, the agents partici-

pated in the drug sales and were party to everything that occurred relevant to the crimes for which Vanmanivong was charged.

¶ 46. Following the cross-examination of Detective Bloedorn, defense counsel moved for all of his exhibits, including Exhibit 43, to be moved into evidence. The trial court granted this request. The defense essentially acknowledged the validity of the documents as sworn statements by Detective Bloedorn. Although Exhibit 43 was not initially valid for purposes of the in camera review, once this document was moved into evidence, it became valid evidence. Exhibit 43 explains the misidentification process and clearly states that the confidential informants identified the defendant as the person they knew as Shorty. The dissent asserts that this memo "attests only to the officers' confusion about the identity of the defendant" and "does not provide any further insight into the confidential informants' knowledge of the defendant's identity." Dissent, ¶ 65 (emphasis omitted). However, as the dissent acknowledges, the memo verifies that Detective Bloedorn showed a photo of the defendant to the informants and the informants identified the person in the photo as the person they knew as Shorty. *See* dissent, ¶ 65. The memo containing that verification came in as evidence when the *defense* requested its admission.

¶ 47. Further, it is apparent that the circuit court's main point of confusion had little to do with the informants. As noted earlier, the circuit court, in making its oral ruling on the defense motion, stated: "The confusion that appears from the original identification . . . is not activities that involve the confidential informants but apparently are activities that centered around the actions of law enforcement."

¶ 48. Given that the very same memo containing the information the judge relied upon after the in camera proceeding was later introduced into evidence at trial, there is no possibility that the informants' testimony would have produced a reasonable doubt in this case. The judge's ruling on disclosure would not have changed. Thus, disclosure of the informants' identities was not required in this case. Had the memo been appropriately procured and in the form of a sworn affidavit in the first place, there was sufficient evidence to uphold the discretionary decision of the circuit court not to disclose the identities of these informants. As it is, the same information came out through the trial, and the errors during the in camera process were rendered harmless. The information upon which the court relied in denying the defense motion for disclosure of the informants' identities later came into evidence at trial and, at that time, provided sufficient basis for the court's ruling. Unlike the *Rizzo* case, we have a sufficient record upon which to determine whether the defendant would have been successful in his motion absent the error. *See Rizzo,* 250 Wis. 2d 407, ¶ 44 ("Because . . . the circuit court never had the opportunity to exercise its discretion in applying the *Maday* factors, we do not know whether Rizzo would have been able to survive a determination under *Maday*.").

¶ 49. We find that because the memo introduced into evidence by the defense shows the informants identified the defendant, the circuit court's ruling was validated. Remand in this case to redo the in camera proceeding and avoid the procedural errors would be repetitive, leading to the collection of the same evidence and, subsequently, the same ruling by the circuit court. The jury had before it the same information it would have had if the procedural errors had not occurred. As

such, there is no possibility that these two procedural errors contributed to Vanmanivong's convictions.

¶ 50. For the foregoing reasons, we find that the standards applied by the court of appeals were not in accordance with the precedent of this court. We have explained the correct procedures to be applied by the circuit court when determining if an informant's identity should be disclosed. Justice Callow's concurrence in *Outlaw* correctly represents the test to be applied in Wisconsin on the issue of whether informants' identities need to be released to the defendant. We also hold that although we agree with the court of appeals that the circuit court erred in relying upon an unsworn memo and gathering evidence independently, we find that such errors were harmless in the context of this case. Because the errors were harmless, we reverse the decision of the court of appeals and hold that the defendant's convictions on the five counts of distributing cocaine be reinstated.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 51. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I would affirm the decision of the court of appeals. I dissent for two reasons. First, I agree with the court of appeals that the case should be remanded to the circuit court so that Wis. Stat. § 905.10(3)(b) can be properly applied. Second, I am concerned that the majority opinion leaves the correct interpretation of § 905.10(3)(b) in doubt.

I

¶ 52. It is undisputed that the circuit court failed to follow the in camera procedure mandated by Wis. Stat. § 905.10(3)(b) and thus did not make the requisite

238

determination of whether the confidential informants' testimony was "necessary" to the defendant's defense. I dissent because I do not believe that this error is subject to harmless error analysis.[1]

¶ 53. The issue in this case is not whether, under harmless error analysis, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[2] Rather, the issue is whether the circuit court's failure to follow the procedure in Wis. Stat. § 905.10(3)(b) led to the exclusion of testimony that might have been "necessary" to the defendant's defense.

¶ 54. Because I believe that the harmfulness of the error cannot be assessed without a proper determination as to whether the informants' testimony is "necessary" to the defendant, I would affirm the remedy detailed by the court of appeals.[3] The five convictions relating to the drug buys made in the presence of the

---

[1] Majority op., ¶¶ 35, 41–42 (citing Wisconsin's harmless error test as that stated in *Chapman v. California,* 386 U.S. 18, 24 (1967)).

[2] *See* majority op., ¶¶ 35, 41–42.

[3] The majority opinion brings an inconsistency in our case law to light. The majority cites *State v. Green,* 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, for the proposition that a defendant bears the burden of proving that a circuit court's error in denying him an in camera review of privileged materials was not harmless, contrary to the general rule that the beneficiary of the error bears the burden of proving harmlessness. Majority op., ¶ 38. The majority opinion then correctly holds that in this case, pursuant to *State v. Harvey,* 2002 WI 93, ¶¶ 40–41, 254 Wis. 2d 442, 647 N.W.2d 189, the burden of proving that a circuit court's error in conducting an in camera review of confidential information is harmless is on the beneficiary of that error. Majority op., ¶ 40. I question why the burden is placed on different parties in these two situations.

confidential informants should be conditionally reversed and the matter should be remanded to the circuit court for a new in camera determination conducted in accordance with the provisions of Wis. Stat. § 905.10(3)(b). If the circuit court determines that the informants' testimony is not necessary to the defense, the convictions may be reinstated. If, however, the circuit court determines that the informants' testimony is necessary, then the privilege of confidentiality must give way to the defendant's right to present a defense, and the defendant is entitled to a new trial on these five counts.

¶ 55. The issue presented in this case is similar to one faced by this court in *State v. Rizzo*, 2002 WI 20, 250 Wis. 2d 407, 640 N.W.2d 93. Under Wisconsin law, "fundamental fairness" requires that a defendant in a sexual assault case be entitled to a pretrial psychological examination of the alleged victim when the State seeks to put on *Jensen* evidence—evidence that the alleged victim is demonstrating behaviors consistent with the behaviors of other such victims.[4] Absent this opportunity, the defendant is not playing on a level field and does not have an adequate chance to counter the State's evidence.[5]

¶ 56. This right, however, must be balanced against the privacy interests of the victim. Consequently, circuit courts have been directed to consider

---

[4] *State v. Rizzo*, 2002 WI 20, ¶ 14, 250 Wis. 2d 407, 640 N.W.2d 93 (citing *State v. Maday*, 179 Wis. 2d 346, 357, 507 N.W.2d 365 (Ct. App. 1993)).

"*Jensen* evidence" refers to this court's decision in *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1988).

[5] *Maday*, 179 Wis. 2d at 357.

the seven *Maday* factors[6] to determine if the defendant in a given case "has a compelling need or reason" for the examination, thereby warranting an intrusion into the privacy interests of the victim.[7]

¶ 57. In *Rizzo*, this court held that the proper remedy for a defendant who was convicted at trial after he was erroneously denied the opportunity to have a pretrial determination of his right to conduct an independent psychological examination of the sexual assault victim was to remand the matter to the circuit court with directions to conduct the appropriate pretrial determination.

> Only if Rizzo should have been granted his request for a pretrial psychological examination did the State's introduction of *Jensen* evidence violate his rights to due process and a fair trial. Because, as we have already noted, the circuit court never had the opportunity to exercise its discretion in applying the *Maday* factors, we do not know whether Rizzo would have been able to survive a determination under *Maday*.[8]

¶ 58. The remedy in the case at hand should be no different. It is true that *Rizzo* is not on all fours with the case at hand. The circuit court in *Rizzo* made no determination as to whether the defendant was entitled to a pretrial psychological examination and thus there was no record from which an appellate court could assess harmlessness. In the present case, by contrast, the circuit court conducted a pretrial hearing and created a record. This distinction, however, is irrelevant

---

[6] The "*Maday* factors" are so named because they were first detailed in *State v. Maday,* 179 Wis. 2d 346, 507 N.W.2d 365 (Ct. App. 1993).

[7] *Maday,* 179 Wis. 2d at 360.

[8] *Rizzo,* 250 Wis. 2d 407, ¶ 44.

since the precise issue in this case is the sufficiency of that record in determining whether the informants' testimony is "necessary" to the defendant.

¶ 59. The circuit court never properly applied Wis. Stat. § 905.10(3)(b) to determine whether the defendant was entitled to know the identity and thereby present the testimony of the confidential informants in this case. The circuit court made its determination to deny the defendant's request based on three documents—two affidavits from which it "gained little information" and required "further clarification" and an inadmissible, unsworn, ex parte memo from a police officer. We simply do not know, therefore, whether the defendant would have prevailed if the proper procedure had been followed and *adequate information* had been considered by the circuit court.

¶ 60. The majority opinion concludes, "[I]n this case, the balance between the defendant's rights and the right of the state to protect its informants was adequately provided for by the procedures used at this defendant's trial."[9] The majority points out that the unsworn document submitted by Detective Bloedorn was admitted into evidence, and that the defendant therefore had an opportunity to cross-examine police officers about their confusion concerning the identity of the defendant, as evidence of the "procedures" at trial that "adequately" balanced the competing interests in this case.

¶ 61. I fail to understand how this evidence sufficiently compensates for the improper pretrial determination. In order for the procedures used during trial to permit an appellate court to determine that the defendant's rights were adequately balanced against

[9] Majority op., ¶ 30.

the state's right to protect its informants, and thus that the underlying error was harmless, sufficient information must have been elicited at trial to make a determination that the testimony of the confidential informants was not necessary to the defendant's defense.

¶ 62. In *State v. Ballos,* 230 Wis. 2d 495, 602 N.W.2d 117 (Ct. App. 1999), for example, the defendant in an arson case made a pretrial request for an in camera inspection of the mental health records of one of the state's witnesses. The witness was an accomplice who had struck a deal with the state in exchange for his testimony against the defendant. The defendant argued that the records would demonstrate that the witness was obsessed with building bombs and was mentally unstable, and that being able to present this evidence was necessary to his defense. The circuit court denied the request.

¶ 63. On appeal, the court of appeals concluded that the circuit court's decision was erroneous. However, it went on to hold that the error was harmless because the jury learned during the witness's testimony at trial that he had received mental health counseling prior to the fire; that he had received medication, including anti-depressants; and that he had admitted an interest in blowing things up.

¶ 64. Here, in contrast, the information elicited during the defendant's trial does not provide any similar substitute for the information that should have been considered during the pretrial in camera investigation. The confidential informants' testimony in this case is "necessary" if it could have " 'created in the minds of the jurors a reasonable doubt' regarding a defendant's

243

guilt,"[10] and nothing testified to at trial assists in making this determination.

¶ 65. The unsworn memo attests only to the *officers'* confusion about the identity of the defendant. It says very little about the knowledge that the confidential informants had or the testimony they could offer at trial. The single paragraph in Detective Bloedorn's memo discussing the confidential informants reads as follows:

> Neither of the Confidential Informants were [sic] ever aware of the identity of "Shorty." The CI's introduced two different undercover officers and were acting independently of each other. Neither of the CI's were aware of each others activities. When I obtained the affidavits for the Court, I at that time did show a photo of Sing Chen to both CI's. Both CI's stated that the photo was that of "Shorty."

In short, it does not provide any further insight into the confidential informants' knowledge of the defendant's identity. It explains that Detective Bloedorn had shown them a photo of the defendant and that both stated that the photo was that of Shorty, but this information was already included in the original affidavits that the circuit court found unenlightening.

¶ 66. The factual dispute underlying this case is whether the defendant was the person with whom the police officers and the confidential informants engaged in drug transactions on five separate occasions. The police officers initially believed that the person from whom they bought drugs was a man of Asian descent, in his 20s, named Pao Moua. They later testified that the

___

[10] *State v. Outlaw,* 108 Wis. 2d 112, 140, 321 N.W.2d 145 (1982) (Callow, J., concurring).

seller was in fact the defendant, a man of Asian descent, in his 30s, named Sing Chen.

¶ 67. While the defendant had the opportunity at trial to cross-examine the police officers about this mistake and introduce evidence attesting to their confusion, he never had the opportunity to present or test the testimony of the other witnesses to the transactions —the confidential informants.

¶ 68. While the defendant's right to cross-examine is not absolute, it has been denied in the present case without the aid of information that illuminates the potential scope or content of the confidential informants' testimony and thus without adequate consideration of his interests in a fair trial. Neither the circuit court, nor the jury, nor this court has had a chance to consider evidence of the confidential informants' testimony that did not require "further clarification," and yet this court stands firm in its conclusion that "there is no possibility that the informants' testimony would have produced a reasonable doubt in this case."[11]

¶ 69. In addition, if the circuit court were to find on remand that the testimony of the confidential informants was necessary to the defendant's defense, this court cannot conclude that the failure to provide it was nonetheless harmless. The same argument was raised and rejected in *Rizzo:*

> [A] determination that the psychological examination was necessary to level the playing field seems inconsistent with a determination that the absence of such an examination was harmless error. A decision by the circuit court that a defendant is entitled to a pretrial psychological examination of the victim is tantamount

---

[11] Majority op., ¶ 48.

to a determination that fundamental fairness requires that the defendant be given the opportunity to present relevant evidence to counter the State's *Jensen* evidence. Accordingly, we do not apply a harmless error analysis.[12]

¶ 70. The *Rizzo* analysis of remedy squarely fits the situation at hand. As the majority opinion explains, the balancing of interests required under Wis. Stat. § 905.10(3)(b) also has its roots in the idea of "fundamental fairness."[13] The statute is specifically designed to incorporate two competing interests: the public's interest in effective law enforcement, embodied in the confidential informant's privilege, and the defendant's right to present a defense and have a fair trial.[14] In order to properly balance these interests, the circuit court is required to conduct a pretrial in camera examination to determine if the requested privileged information is "necessary" to the defendant's defense and therefore must be disclosed to the defendant.

¶ 71. As was true in *Rizzo,* a determination that the informants' testimony is necessary to the defendant in this case is inconsistent with a determination that the absence of the testimony was harmless error. A decision by the circuit court that the defendant in this case is entitled to the identity and thus the testimony of the confidential informants is tantamount to a determination that fundamental fairness requires that the defendant be given the opportunity to present relevant evidence to counter the State's evidence. Thus, the harmless error analysis does not apply.

---

[12] *Rizzo,* 250 Wis. 2d 407, ¶ 47 (citation omitted).

[13] Majority op., ¶ 19.

[14] Majority op., ¶ 20.

## II

¶ 72. I am concerned that the majority opinion leaves the correct interpretation of § 905.10(3)(b) in doubt.

¶ 73. The majority opinion is correct to point out that Wisconsin law, like federal law, holds that neither a confidential informant's privilege nor a defendant's right to confront a confidential informant is absolute, and that determining when the informant's privilege must give way to a defendant's right to a fair trial requires a case-by-case balancing of the public's interest in effective law enforcement against an individual's constitutional rights.[15]

¶ 74. The concurring/majority opinion in *Outlaw,* however, expressly rejected the test established by the United States Supreme Court in *Roviaro* for making this proper balance. The *Outlaw* concurring/majority opinion stated bluntly that although federal case law is relevant and helpful in interpreting Wis. Stat. § 905.10(3)(b), it is not controlling. "The Wisconsin [informer's privilege] rule is distinctly a product of Wisconsin Supreme Court rule making."[16]

¶ 75. More specifically, the *Outlaw* concurring/majority opinion concluded that Wis. Stat. § 905.10(3)(b) clearly specifies that a confidential informant's privilege will give way only where his testimony is "necessary" to a fair trial. An informer's testimony is necessary if it "could have created in the minds of the jurors a reasonable doubt regarding a

---

[15] *See Roviaro v. United States,* 353 U.S. 53, 62 (1957); *Outlaw,* 108 Wis. 2d at 141 (Callow, J., concurring).

[16] *Outlaw,* 108 Wis. 2d at 139 (Callow, J., concurring) (quoting *Outlaw* majority op.).

defendant's guilt."[17] In contrast, the *Roviaro* decision holds that "where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, *or* is essential to a fair determination of a cause, the privilege *must* give way."[18] As Justice Callow wrote in *Outlaw* criticizing the lead opinion, "I do not believe that relevant and admissible in respect to an issue material to the accused's defense is the equivalent of reasonably necessary to a fair determination of guilt or innocence."[19]

¶ 76. The defendant argues that the test announced in the *Outlaw* concurrence/majority opinion for determining when a confidential informant's privilege must give way to a defendant's right to a fair trial is too strict. He urges this court to adopt the more lenient *Roviaro* test, citing to analogous tests in *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987), *State v. Richard A.P.,* 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998), and *State v. Shiffra,* 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993). The majority opinion's response to the defendant is to conflate *Roviaro* and *Outlaw,* leaving the reader to wonder whether the more lenient federal *Roviaro* test or the stricter *Outlaw* concurrence/majority test is controlling law in Wisconsin.

¶ 77. For the foregoing reasons, I dissent.

¶ 78. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

[17] *Id.* at 140 (Callow, J., concurring) (citations omitted).

[18] *Roviaro,* 353 U.S. at 60–61 (emphasis added).

[19] *Outlaw,* 108 Wis. 2d at 139 (Callow, J., concurring).